UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/5/07

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In re:                                                    :    Chapter 11
                                                          :
ENRON CORP., et al.,                                      :    Case No. 01-16034 (AJG)
                                                          :
                    Debtors.                              :
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                          :
UNITED STATES OF AMERICA ex rel.                          :
JACK J. GRYNBERG,                                         :
                                                          :
                    Appellant,                            :
                                                          :
          - against -                                     :    06 Civ. 2684 (RJH) (AJG)
                                                          :
                                                          :
ENRON CORP., et al.,                                      :    **MEMORANDUM**
                                                          :    **OPINION AND ORDER**
                    Appellees.                            :
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Appellant Jack J. Grynberg, on behalf of the United States of America, appeals

from a judgment of the United States Bankruptcy Court for the Southern District of New

York denying plaintiff's motion for an extension of time in which to file a notice of appeal.

Appellant contends that his late filing was justified by excusable neglect, and that his

claims purportedly on behalf of the interests of the United States and Native Americans

should not have been terminated prematurely. For the reasons stated below, the Court

finds that the bankruptcy court did not abuse its discretion in denying the motion, and

therefore denies the appeal.

## BACKGROUND

Beginning on December 2, 2001, Enron Corporation and its subsidiaries ("debtors") each filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. On January 6, 2002, appellant timely filed Claim No. 383 seeking $10.5 billion from debtors for alleged unpaid royalties arising from natural resource extraction in lands owned by the United States and Native Americans. (Proof of Claim No. 383.) Appellant's claim against debtors is one of the many that form the basis of multidistrict litigation initiated in 1997 under the False Claims Act, consolidated in the United States District Court for the District of Wyoming (the "*qui tam* action"). Debtors filed an objection to the claim on May 15, 2003 and the bankruptcy court set a hearing date that was adjourned to early July 2003. Neither appellant nor his counsel of record appeared at the hearing on the initial objection, and the bankruptcy court directed debtors to file a proposed order disallowing appellant's claim. Appellant filed an objection to this proposed order, in which his counsel stated that she did not receive the fax confirmation and instructions for telephonic appearance for the hearing and was thus unable to appear. The Bankruptcy Court rescheduled the hearing for July 24, 2003 and thereafter took the matter under consideration.[1]

On December 15, 2005, the reorganized debtors filed a motion for an order estimating certain claims for the purpose of establishing reserves, in which they sought to estimate appellant's claim at $0. Pursuant to a case management order dated December 17, 2005, a hearing on the estimation motion was set for January 5, 2006. On December 28,

---

[1] At the hearing, appellant was questioned about his failure to seek relief from the automatic stay imposed on litigation against chapter 11 debtors in connection with his *qui tam* action. He maintained that the amended complaint, despite being filed after debtors had filed for bankruptcy (and after he had filed his claim in the chapter 11 proceeding), did not violate the stay.

2005, appellant filed an objection to the estimation motion. However, neither he nor any representative appeared at the January 5, 2006 hearing. On the following day, January 6, 2006, the court entered an order estimating appellant's claim at $0, accompanied by a written opinion that was read into the record. (Estimation Order, Docket No. 28678.)

Seventeen days later, on January 23, 2006, appellant filed a notice of appeal and a motion for an extension of time in which to file an appeal pursuant to Bankruptcy Rule 8002. (Notice of Appeal, Docket No. 28811; Appeal Extension Motion, Docket No. 28812.) Appellant argued that he had not received the estimation order until January 20, 2006 when he received it from a counterparty in the *qui tam* action and thus could not have filed the appeal any earlier. Reorganized debtors filed an objection to the motion, and the bankruptcy court held a hearing on February 2, 2006. (Appeal Extension Objection, Docket No. 28863.) On February 16, 2006, the bankruptcy court denied the appeal extension motion. (Appeal Extension Order, Docket No. 28940.) Appellant timely appealed the order, and that appeal is now before the Court.

Appellant ultimately wishes to challenge the bankruptcy court's estimation of his claim at $0, which was based on a finding that jurisdictional defects in the *qui tam* action would result in its dismissal and no damages being awarded against debtors. The bankruptcy court issued the estimation order deciding these jurisdictional issues being litigated in Wyoming district court before any opinion issued in that case. At the time briefing was completed for this appeal, the Wyoming district court still had not issued any opinion. However, the Wyoming district court has since issued an opinion in which it did in fact dismiss appellant's claims against defendant companies, including debtors, based on the same jurisdictional defects relied on by the bankruptcy court in its estimation order.

3

*See In re Natural Gas Royalties Qui Tam Litig.*, No. 99-MD-1293-D, 2006 U.S. Dist.
LEXIS 76833, 2006 WL 3589009 (D. Wyo. October 20, 2006). Thus, the litigation that
was the basis for appellant's claim against debtors has now been dismissed at the district
court level. While this appeal concerns only the bankruptcy court's order denying
appellant's appeal extension motion, the bankruptcy court's reasoning in its estimation
order, which appellant ultimately wishes to challenge, appears to have been confirmed in
the *qui tam* action.

## STANDARD OF REVIEW

On appeal, a district court reviews a bankruptcy court's finding of facts under a
clearly erroneous standard, Fed. R. Bankr. 8013, and its conclusions of law de novo, *In re
AroChem Corp.*, 176 F.3d 610, 620 (2d Cir. 1999); *In re Bennett Funding Group, Inc.,* 146
F.3d 136, 138 (2d Cir.1998). Specifically relevant to this case, a district court reviews a
bankruptcy's determination of the existence of excusable neglect under an abuse of
discretion standard. *See Joslin v. Wechsler (In re Wechsler)*, 246 B.R. 490, 492 (S.D.N.Y.
2000); *Hirsch v. London Steamship Owners' Mut. Life Ins. Assn. Ltd. (In re Seatrain
Lines)*, 198 B.R. 45, 53 (S.D.N.Y. 1996) ("Decisions involving excusable neglect are
reviewed under an 'abuse of discretion' standard." (citing *In re Au Coton, Inc.*, 171 B.R.
16, 18 (S.D.N.Y. 1994) and *Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 16 F.3d 501,
502 (2d Cir. 1994))). The Court is not to consider whether it would have made the same
decision, but only whether the decision was reasonable. *In re Jamesway Corp.*, 179 B.R.
33, 39 (S.D.N.Y. 1995).

## DISCUSSION

Rule 8002(a) of the Bankruptcy Rules states that a "notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from." However, Rule 8002(c)(2) allows a bankruptcy court to grant a request for an extension of time to file a notice of appeal of up to twenty days "upon a showing of excusable neglect," if filed within the twenty-day period. The Supreme Court outlined the proper factors to be considered when evaluating "excusable neglect" in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993). While the Supreme Court's decision concerned the granting of an extension for a creditor to file a late proof of claim, the *Pioneer* factors apply with equal force to the determination under Rule 8002(c)(2) of whether a party's failure to timely file an appeal was justified by "excusable neglect." *See Joslin*, 246 B.R. at 492–93; *United States Lines, Inc. v. United States (In re McLean Indus., Inc.)*, 196 B.R. 670, 674 n.1 (S.D.N.Y. 1996). The party seeking the extension of time in which to file a notice of appeal has the burden of establishing "excusable neglect." *See Xuchang Rihetai Human Hair Goods, Co. v. Sun and Xie (In re Hongjun Sun)*, 323 B.R. 561, 563 (Bankr. E.D.N.Y. 2005); *In re Hilliard*, 36 B.R. 80, 82 (S.D.N.Y. 1984).

The Supreme Court held that the determination of excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs Co.*, 507 U.S. at 395. The factors to be considered include "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* Where appropriate, these factors may allow a bankruptcy court "to accept late filings caused by

inadvertence, mistake, or carelessness." *Id.* at 388.  Appellant, barely addressing the

*Pioneer* factors, argues that the bankruptcy court abused its discretion in denying his

motion.  His principal arguments are as follows: (1) he never received the January 6, 2006

order from the bankruptcy court, but instead received it from an adversary in the *qui tam*

action; (2) as soon as he received the order, he filed his appeal; (3) the United States and

Native Americans will benefit substantially from recovery from Enron; and (4) he is

proceeding pro se and lives eight hundred miles from the bankruptcy court.

## 1.    **Prejudice to the Debtors**

In their initial objections to the appeal extension motion, debtors argued that they

would be prejudiced because they would be required to reestablish enormous reserves (the

claim was for $10.5 billion), and distribution to bona fide creditors would be significantly

impeded.  (Appeal Extension Objection 7–8.)  In rejecting this argument, the bankruptcy

court correctly pointed out that the relevant prejudice is not the prejudice resulting from an

appeal being filed, but rather the added prejudice from the late filing of the appeal.

(Appeal Extension Order 9.)  However, the bankruptcy court found another type of

prejudice that would result from permitting a late appeal to be filed.  There were over

25,000 claims filed in debtors' bankruptcy, of which over 15,800 were disallowed.  The

bankruptcy court found that if it allowed a late appeal based solely on the lack of

knowledge that an order had been entered, it would open the door for any number of the

disallowed claimants to argue that they simply did not know an order had been entered

disallowing their claims.  *See Midland Congeneration Venture Ltd. P'ship v. Enron Corp.*

*(In re Enron Corp.)*, 419 F.3d 115, 130 (2d Cir. 2005) (considering "whether allowing a

claim would be likely to precipitate a flood of similar claims").  While the Court

recognizes that such prejudice to debtors is inherently speculative, appellant has not offered any evidence countering such a possibility. The Court cannot say that the bankruptcy court abused its discretion in finding that the possibility of a flood of challenges based on a failure to receive orders constitutes prejudice to the debtors.

## 2.   Length of Delay and Impact on Judicial Proceedings

Rule 8002(c)(2) ultimately limits the filing of a notice of appeal and an appeal extension motion to twenty days beyond the 10-day appeal deadline. Thus, unlike the case of late-filed proof of claims, the length of the delay in filing an untimely appeal will rarely if ever have an impact on judicial proceedings. *See In re Hongjun Sun*, 323 B.R. at 565 ("Due to the strict time constraints governing appeals . . ., delay always will be minimal in actual if not relative terms."). Therefore, in analyzing excusable neglect in filing a late appeal, courts often give special weight to the third factor, the reason for the delay. *See id.* at 564 ("[T]he main focus of inquiry is the third factor, 'the reason for the delay, including whether it was within the reasonable control of the movant.'" (quoting *Silivanch v. Celebrity Cruises, Inc.*, 333 F.3d 355, 366 (2d Cir. 2003))); *In re Au Coton*, 171 B.R. at 18 (citing "reason for delay" as a "prominent factor"); *Weinstock*, 16 F.3d at 503 (same).

## 3.   Reason for Delay

Appellant contends, as he did in seeking the extension, that the reason for the delay was the failure of the bankruptcy court to provide him with a copy of the Estimation Order. Thus, he lays the blame squarely with the bankruptcy court. (*See* Appeal 8 ("[T]he Court never transmitted its Order to the Appellant.").) Courts have declined to countenance such blame-shifting by litigants, who are responsible for staying abreast of the docket and

7

forthcoming court orders. *See In re Wechsler*, 246 B.R. at 495 ("reason for delay" weighs against party where he "failed to check the docket for weeks");

*Crysen/Montenay Energy Co. v. Belcher Co. of N.Y.*, No. 93 Civ. 339 (RPP), 1993 U.S. Dist. LEXIS 12858, 1993 WL 362360, at \*3 (S.D.N.Y. September 17, 1993) ("reason for delay" weighs against party where he knew "an order was likely to be forthcoming"). Indeed, as noted by the bankruptcy court, while Bankruptcy Rule 9022(a) provides that the clerk shall serve a notice of entry of an order to litigants, it explicitly provides that "lack of notice of the entry does not affect the time to appeal or relieve or authorize the court the relive a party for failure to appeal within the time allowed, except as permitted in Rule 8002." *See also In re Hilliard*, 36 B.R. at 83 ("Notification by the clerk is merely for the convenience of the litigants. And lack of such notification in itself has no effect upon the time for appeal." (citing Advisory Committee Notes to Fed. R. Civ. P. 77(d))).

Beyond noting that it was not the Court's responsibility to inform appellant of the order, the bankruptcy court made specific findings of errors made by appellant that resulted in the lack of notice, including: (1) failure to comply with a Case Management Order explaining how to receive notice, including giving an electronic mail address to the clerk; (2) failure to appear at the January 5, 2006 hearing, despite being allowed to appear telephonically, and his counsel having availed herself of such a procedure in the past; (3) failure to monitor the hearing, despite knowledge that debtors had requested expedited resolution of the estimation motion; and (4) failure to seek clarification if appellant was confused about the rules of the court. (Appeal Extension Order 14.) Appellant's entreaties for the Court to consider the interests of the United States and Native Americans ring hollow given his failure to appear at the January 5 hearing, support his objections to

8

debtors' estimation motion, and to monitor the results of the hearing. The reason for delay, which was entirely within appellant's control, weighs strongly against the granting of an extension.

Moreover, the bankruptcy court did not abuse its discretion in failing to relax the standards of "excusable neglect" given appellant's pro se status and residence a great distance from the courthouse. The bankruptcy court noted that appellant had frequently appeared by way of counsel, was clearly able to secure counsel, and could be considered a sophisticated litigant considering his experience in the $10.5 billion *qui tam* action. (*Id.* at 16–17.) Even if appellant was a more traditional pro se litigant, such a status does not excuse him from complying with court rules. *See In re Bucurescu*, 01 Civ. 2799 (SHS), 2003 U.S. Dist. LEXIS 9341, 2003 WL 21297282, at *4 (S.D.N.Y. June 4, 2003) ("Simple ignorance by a pro se litigant of the applicability of an expressly stated time limitation does not constitute excusable neglect." (internal citations omitted)); *Riedel v. Marine Midland Bank*, No. 96-CV-1082, 1997 U.S. Dist. LEXIS 4551, 1997 WL 176306, at *2 (N.D.N.Y. April 10, 1997) ("notwithstanding his pro se status, he was required to abide by the bankruptcy court rules").

## 4. **Good Faith of the Movant**

The bankruptcy court made a finding that appellant had not proceeded before it in "good faith." It relied on the fact that appellant had failed to respond to what would appear to be a violation of the automatic stay of litigation against debtors once they have filed for bankruptcy and had missed several deadlines. This evidenced a "general disregard for both the procedural and fundamental issues raised in this matter." (Appeal Extension Order 19.) While general evidence of bad faith in prosecuting a claim is not specifically one of the

9

*Pioneer* factors, it is surely some evidence of bad faith on the appeal. In any event, giving consideration to all the factors before the bankruptcy court, there is sufficient support for the bankruptcy court's ruling. The Court holds that the bankruptcy court was reasonable and did not abuse its discretion in denying the appeal extension motion.

## CONCLUSION

For the foregoing reasons, Grynberg's appeal is denied and the bankruptcy court's order denying appellant's motion for an extension of time in which to file an appeal is affirmed.

SO ORDERED.

Dated: New York, New York
       March 2, 2007

Richard J. Holwell
United States District Judge